## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District  Northern District of Iowa | |
|---|---|---|
| Name *(under which you were convicted):*  MICHAEL GOODALE | | Docket or Case No.:  CR 12-3011-LRR-1 |
| Place of Confinement:  U.S. Penitentiary, Tucson, AZ | Prisoner No.:  12002-029 | |
| UNITED STATES OF AMERICA,  Respondent | Movant *(include name under which convicted)* | |
| | V.    MICHAEL GOODALE, Movant-Defendant | |

### MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   United States District Court
   Northern District of Iowa
   Cedar Rapids, IA

   (b) Criminal docket or case number (if you know):  3:12-cr-03011-LRR

2. (a) Date of the judgment of conviction (if you know):  December 7, 2012

   (b) Date of sentencing:  December 6, 2012

3. Length of sentence:  Life imprisonment on each of Counts One, Three, and Four, and
   120 months imprisonment on Count Five, served concurrently.

4. Nature of crime (all counts):

   Counts 1-2: 18 U.S.C. § 2241(c), Aggravated Sexual Abuse

   Counts 3-4: 18 U.S.C. § 2423(a), Interstate Transportation of a Minor with
       Intent to Engage in Criminal Sexual Activity

   Count 5: 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), Accessing Child Pornography

5. (a) What was your plea? (Check one)
   (1) Not guilty [X]       (2) Guilty [ ]       (3) Nolo contendere (no contest) [ ]

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)     Jury [X]     Judge only [ ]

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes [ ]     No [X]

8. Did you appeal from the judgment of conviction?     Yes [X]     No [ ]

9.  If you did appeal, answer the following:

    (a) Name of court:   United States Court of Appeals for the Eighth Circuit

    (b) Docket or case number (if you know):  12-3972

    (c) Result:  Judgment affirmed.

    (d) Date of result (if you know):  December 30, 2013

    (e) Citation to the case (if you know):  United States v. Goodale, 738 F.3d 917 (8th Cir. 2013)

    (f) Grounds raised:

        1) Evidence obtained in violation of the Fourth Amendment was used against Mr. Goodale at trial.

        2) The evidence that Mr. Goodale transported boys under or over age 12 across state lines to commit a sex act is insufficient.

        3) Mr. Goodale's sentence of life in prison without parole is unreasonable and derived from an incorrect application of the sentencing guidelines.

    (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes  [X]    No [ ]

      If "Yes," answer the following:

      (1) Docket or case number (if you know):  13-10173

      (2) Result:  Petition for writ of certiorari to the United States Court of Appeals for the Eighth Circuit denied.

      (3) Date of result (if you know):  June 23, 2014

      (4) Citation to the case (if you know):  Goodale v. United States, 134 S.Ct. 2856 (2014)

      (5) Grounds raised:

        Is Mr. Goodale's sentence of life in prison without parole substantively unreasonable or unconstitutional as applied?

        Although the private search doctrine applies to unreasonable searches and seizures, does it extend to searches and seizures that constitute the commission of a crime?

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

    Yes [ ]   No [X]

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court:

       (2) Docket or case number (if you know):

       (3) Date of filing (if you know):

      (4) Nature of the proceeding:

      (5) Grounds raised:

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

     Yes ☐     No ☐

(7)   Result: _____

(8)   Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

(1)   Name of court: _____

(2)   Docket of case number (if you know): _____

(3)   Date of filing (if you know): _____

(4)   Nature of the proceeding: _____

(5)   Grounds raised:




(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

     Yes ☐     No ☐

(7)   Result: _____

(8)   Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition,

or application?

(1)   First petition:     Yes ☐     No ☐

(2)   Second petition:     Yes ☐     No ☐

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:


12.   For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** _____ See attached. _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are properly raised on collateral attack.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐      No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐      No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐      No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND TWO:**      See attached.
_____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_____

(b)  **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☒

(2)   If you did not raise this issue in your direct appeal, explain why:

My right to raise this issue was involuntarily waived by the ineffective assistance of my appellate counsel.

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☒

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐          No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐          No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐          No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**          See attached.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b) **Direct Appeal of Ground Three:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐    No ☒

    (2)  If you did not raise this issue in your direct appeal, explain why:

        My right to raise this issue was involuntarily waived by the ineffective assistance of my appellate counsel.

(c) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐    No ☒

    (2)  If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed:

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐    No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐    No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐    No ☐

    (6)  If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**   <u>See attached.</u>

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Four:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☒

(2)  If you did not raise this issue in your direct appeal, explain why:

My right to raise this issue was involuntarily waived by the ineffective assistance of my appellate counsel.

(c)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☒

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

      Yes ☐     No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

      Yes ☐     No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

      Yes ☐     No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____


(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this
issue:




_____


13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which
ground or grounds have not been presented, and state your reasons for not presenting them:

None of the grounds in the instant motion have been raised previously in any
federal court due to the constitutionally ineffective assistance of both trial
and appellate counsel.




_____


14.   Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the
you are challenging?     Yes ☐    No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the
issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a) At the preliminary hearing:

NA
_____

(b) At the arraignment and plea:

Mark R. Brown, 211 3rd Ave SW, Cedar Rapids, IA 52404, attybrown@aol.com
_____

(c) At the trial:

Mark R. Brown, supra.
_____

(d) At sentencing:

Mark R. Brown, supra.
_____

(e) On appeal:

Mark C. Meyer, 425 2nd St SE, Ste 1250, Cedar Rapids, IA 52401, legalmail@markcmeyer.com
_____

(f) In any post-conviction proceeding:

NA
_____

(g) On appeal from any ruling against you in a post-conviction proceeding:

NA
_____

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?          Yes [X]          No [ ]

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes [ ]          No [X]

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?          Yes [ ]          No [ ]

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

This motion is timely, as my judgment of conviction became final on June 23, 2014.

.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)  the date on which the judgment of conviction became final;

(2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: That this Honorable Court dismiss Count One for failure to state an offense; vacate my conviction as to Counts Three, Four, and Five, and order a new trial in the interest of justice; or in the alternative, order an evidentiary hearing on the merits;
or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on     June 19, 2015     .
(month, date, year)

Executed (signed) on     June 19, 2015     (date)

Michael Goodale, Movant-Defendant

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

Michael Goodale 12002-029
USP Tucson
PO Box 24550
Tucson, AZ 85734-4550

12.    Grounds for Relief

(A)    <u>Ground One</u>:

I was denied effective assistance of counsel at trial and on direct appeal.

<u>Supporting Facts</u>:

(1)    Trial counsel failed to investigate the case and prepare a defense.

My trial counsel, Mark R. Brown, failed in his duty to investigate all reasonable lines of defense, or to make reasonable determinations that such investigation was not necessary. His decision not to investigate was not reasonable because it was uninformed. Mr. Brown failed to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to the facts relevant to the merits of the case.

Mr. Brown was ineffective because he inexplicably failed to interview the alleged victims, and he likewise failed to seek out expert witnesses whom I expressly requested. These failures were so prejudicial as to create a reasonable probability that the result of the trial would have been different had he followed through on my requests.

Mr. Brown's ineffectiveness is clear in the context of his complete failure to investigate because he could not be said to have made a strategic choice against pursuing a certain line of defense when he never investigated the facts upon which such a decision could be made. He offered no strategic justification for his failure to make any effort to investigate the case, and indeed he could have offered no such rationale.

Mr. Brown failed to introduce into evidence information that would have demonstrated my factual innocence, nor any evidence which would have raised sufficient doubt in the minds of the jury. Mr. Brown presented no evidence whatsoever, and thus rendered deficient performance.

Mr. Brown's actions resulted from neglect, rather than reasoned judgment. His unprofessional errors so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair, thus undermining confidence in the verdict.

Mr. Brown failed to prepare my defense competently under the most tolerant standard of evaluation. He failed to obtain legally relevant facts from me; he failed to pursue obvious leads that I provided; and he failed completely to garner corroborating evidence to support my defense. He failed to interview or attempt to interview key witnesses, including the alleged victims, and his review of the trial exhibits was inadequate. During the guilt phase of the trial, Mr. Brown failed to call a single witness or enter a single exhibit; he failed to develop a defense theory, relying instead on the Government's theories as to the facts.

- 14 -

Mr. Brown's duty to investigate was especially critical where, as here, being no physical evidence, the witnesses and their credibility were paramount to the Government's case. His decision not to undertake a substantial pretrial investigation but instead to "investigate" the case during trial was not only uninformed, it was patently unreasonable.

But for Mr. Brown's errors, the outcome of the trial would have been different.

(a)  Trial counsel failed to pursue a physical characteristics defense as to Counts One, Three, and Four.

I informed Mr. Brown at the outset of this case that the alleged victims could not possibly describe my genitals because they had never seen them, and that I wanted to pursue a physical characteristics defense; however, since he failed to obtain physical characteristic evidence supporting my claim, he was precluded from cross-examining the alleged victims concerning my physical characteristics.

The Government's entire case against me was predicated on the conflicting and uncorroborated testimony of the alleged victims. Despite my repeated urgings, Mr. Brown made no attempt to test the credibility of their allegations with physical characteristics evidence. I insisted that the alleged victims would not be able to describe my genitals because I, in fact, never once had sexual contact with them. Rather than conduct such an investigation, by interviewing the alleged victims and comparing their statements to a photographic exemplar, Mr. Brown did nothing with respect to this defense theory, choosing instead to rely solely on cross-examination at trial based on a weak "faulty memory" theory.

Mr. Brown's lack of preparation and subsequent trial strategy were based on his own conclusory — and faulty — decision that the alleged victims would be able to describe my physical characteristics. Once he made that uninformed decision, he failed to take the most elementary step of interviewing the only known eyewitnesses to the underlying basis for the crimes with which I was charged.

The record will show that the alleged victims claimed to have had sexual contact with me no less than 26 times. They claimed to have masturbated me, performed fellatio on me, and to have held my testicles in their hands and mouth in various hotels over roughly a 5-year period. The Government did not proffer any evidence that these acts took place in the dark, or that the alleged victims performed these sex acts with their eyes closed. Based on their own testimony, it can be reasonably inferred that they were intimately familiar with my genitals, having had direct contact with them on numerous occasions. Given their admitted familiarity with my genitals, it would not be unreasonable to expect that they could describe them to a jury. (FN 1) Since they both claimed to have performed

---

[1] This is not to suggest that the alleged victims should be required to recall minute details; however, one would expect that someone who has held and performed fellatio on another person's penis numerous times to be able to say with certainty whether it is circumcised; to recall the length and girth; to recall whether it is straight or curved, or whether there are any distinguishable

sexual acts on my genitals a mere 9 months before trial, and that they had been doing this for at least 5 years, it is also not unreasonable to expect that their memories would be reliable, considering having performed the same acts repeatedly and regularly. Thus, had Mr. Brown on direct examination asked them to describe my genitals, the fact that they would not have been able to do so would have significantly impacted their credibility in the minds of the jury, and changed the outcome of the trial.

In a case such as this, where there is no physical, forensic, circumstantial, or eyewitness evidence to corroborate the testimony of the alleged victims, their credibility is material and completely determinative of the outcome of the trial. For Mr. Brown to ignore the only defense that could have exonerated me was patently derelict and cannot possibly meet the threshold of "effective assistance."

Even though I was not charged with having sex with the alleged victims, the Government elicited their testimony about alleged sexual acts in both Iowa and Minnesota in order to establish the mens rea element of the crimes for which I was charged. Had the jury had doubts as to the veracity of the alleged victims' claims regarding prior sexual activity, they could not have found me guilty of interstate travel with the intent to commit unlawful sexual acts with the alleged victims. That I occasionally traveled to Minnesota with the alleged victims for licit purposes was never at issue, nor could it have supported a conviction in and of itself. The jury was instructed to find that the <u>purpose</u> of the travel was to commit an unlawful sexual act, a mens rea based exclusively on the unsupported allegations made by the alleged victims.

My inability to present a defense of innocence substantiated by a jury's comparison of my physical characteristics with those described by my accusers had a substantial and injurious effect or influence in determining the jury's verdict.

(b)  Trial counsel failed to enlist psychological expert on child sexual abuse as to Counts One, Three, and Four.

Reliability of testimony is an issue in child sexual abuse cases when adult inquisitors use leading and suggestive methods to elicit allegations of abuse from child complainants and witnesses. Forensic investigators who approach fact finding interviews with a pre-conceived single subject hypothesis of guilt often force their subjects — either consciously or unconsciously — to relate accounts of abuse, regardless of whether the acts occurred. Thus, children who have been subjected to such tactics can come to "remember" events that never occurred, but were instead the product of suggestion. These children's statements and testimony are very realistic — or seem credible — because they

_____

blemishes, moles, coloration, or tattoos; and to describe the color and amount of pubic hair. Similarly, a person who has held another person's testicles and placed them in their mouth should be able to describe their size and number, and say with certainty whether or not they were covered in pubic hair.

actually believe they are telling the truth. Hence, the defense challenges to such investigations relate to the reliability of these statements given subsequent to the coercive influence.

Mr. Brown failed to assess whether the Government's interviews of the alleged victims conformed with generally accepted forensic protocols; he failed to assess the alleged victims' competency to testify or to evaluate the accuracy of their memory; he did not assess whether the alleged victims had fabricated the allegations or had been coached; he did not conduct a developmental assessment of the alleged victims; he did not pursue any other possible explanations for the allegations, nor speak to any other significant individuals in their lives; he did not evaluate the extent of the diagnoses of the alleged victims' mental disorders, or how those diagnoses might affect their testimony; he did not explore their motives, nor did he ask either of the alleged victims to describe the physical characteristics of the person whom they claim sexually abused them.

Mr. Brown failed to call as a witness, or even consult with, an expert regarding the above in preparation for trial and cross-examination of the prosecution's expert witness, and thus was derelict in his duty to prepare a constitutionally reasonable defense for his client.

(c)   Trial counsel failed to enlist a computer forensics expert as to Count Five.

Although it was apparent that a critical issue to the outcome could best be resolved by the presentation of forensic evidence, Mr. Brown failed at each stage of the case to consult with a computer forensics expert and thus failed to conduct the rudimentary investigation necessary in order to (1) decide upon the nature of the defense to be presented, (2) determine before trial what evidence he should offer, (3) prepare in advance how to counter damaging expert testimony that might be introduced by the prosecution's own computer forensics expert, and (4) effectively cross-examine and rebut the prosecution's expert witness once they did testify during the course of the trial. There was, in fact, no strategic reason for Mr. Brown's failure to do so. As it turned out, these repeated failures to investigate were prejudicial: available forensic testimony would have contradicted the prosecution's explanation of the events that transpired and would have strongly supported my version.

I have maintained throughout the proceedings of this case that I am innocent as charged, and Mr. Brown was ineffective for failing to pursue my claim of innocence or to obtain the Government's evidence so as to conduct a forensic analysis of my computer's data.

A single incident of access to thumbnail images, in absence of additional circumstances indicating deliberate access or to a continuing interest in child pornography cannot establish the mens rea element of knowingly accessing child pornography. Evidence of access to thumbnail images of child pornography on a single occasion, absent any indicia of a person's deliberate intention to access those images, does not support an inference that a person knowingly intended to view the images. Moreover, evidence that a person viewed thumbnail images of child pornography for just a few seconds does not remotely suggest an intention to view child pornography, especially when that person is shown

- 17 -

to leave the offending website without taking any significant steps to access and view the full-size images that the thumbnails represent. Mr. Brown's failure to investigate, develop, and present evidence rebutting the Government's forensic evidence of my internet searches and browsing history fell below a reasonable standard of professional representation. Mr. Brown had no valid tactical reason for not attacking the computer evidence.

Had Mr. Brown enlisted a computer forensics expert — or, at the very least, someone from the "Geek Squad" — to analyze my computer's data, the following exculpatory evidence could have been presented to the jury:

(1) The source website(s) for each of the images for which I was convicted would be determined and identified.

(2) The websites would be shown to be legitimate, legal pornography websites, each displaying the required 18 U.S.C. § 2257 (FN 2) statement on their home or "splash" page.

(3) The "splash" (advertisement) pages of pornographic websites always contain multiple — sometimes hundreds — thumbnail images, all of which are stored in a computer's hidden image cache the instant the splash page is viewed.

(4) Once a user leaves a website (any website), all the thumbnail images from the website's splash page remain stored on the user's computer.

(5) Regardless of which website(s) I visited, I never purchased a membership or took any steps to purchase or download any of the images represented by the thumbnail images, nor did I deliberately download or attempt to download the thumbnail image itself.

(6) Had I attempted to deliberately download a thumbnail image or the actual full-size image, the resulting file would have been stored in a location other than the hidden system directory where the thumbnails were found.

(7) Legal websites which feature "barely legal" teenage models (age 18-19) routinely use keywords such as "naked", "boy(s)", "fuck", "penis", and "young" as metadata "tags". Search websites such as Google and Yahoo! use these "tags" to match search results to users' inquiries. Thus, a person who is searching for pornography featuring younger or "barely legal" actors will find relevant websites to choose from in the search results.

(8) Some such websites advertise themselves suggestively as underage sexually explicit websites by their names and other features, including the use of deceptive metadata tags to fool search websites, but, ultimately when

---

[2] The Child Protection and Obscenity Enforcement Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, 4485-4503 (1988), as amended by the Child Protection Restoration and Penalties Enhancement Act of 1990, Pub. L. No. 101-647, 104 Stat. 4789, 4816-17 (1990), requires websites containing visual depictions of explicit sexual activity to determine the names and ages of their performers and certify that they are at least 18 years of age.

Case 3:15-cv-03125-LRR-KEM   Document 1   Filed 06/24/15   Page 17 of 26

they are inspected, they turn out not to be unlawful child pornography websites but legal adult pornography websites. It is not uncommon for these websites to use 18-year-old actors who shave their body hair or otherwise attempt to look much younger than their real age, or for the producers of the pornography to airbrush or "photoshop" the images to simulate the use of underage actors.

(9) The DHCP (Dynamic Host Configuration Protocol) logs would have revealed the specific location (based on the computer's assigned IP address) of the computer at the exact moment the allegedly illegal website was being accessed. This information, when cross-referenced to work and school schedules, would reveal who was actually using the computer at the time.

Instead, the Government presented the following evidence to the jury:

(1) It could not be determined from the data in the computer where the images had come from, when they entered the computer, or when they had been deleted and redesignated as slack or unallocated space on the computer's hard drive.

(2) It could not be determined from the data on the computer who, i.e., whether I, M.R., Z.G., or another person, was using the computer when the computer received the images.

(3) It could not be determined whether any of the images found in the computer came from any of the websites that the index.dat file indicated the computer had visited, nor was any evidence introduced from those websites to prove that they contained child pornography.

(4) It could not be determined that I had ever seen the images, knew they were in the computer, or that I had the knowledge and ability to access those images or exercise control over them.

The Government did nothing more than pile inference upon inference in order to get a conviction.

Mr. Brown did not consult with a computer expert, let alone call one as a witness, but was content only to cross-examine the Government's expert witness. Had Mr. Brown called his own computer expert, the expert would have testified that the evidence offered by the Government provided absolutely no basis to support the mens rea element — knowingly accessed with intent to view — of the statute as charged in Count Five of the Indictment.

Had Mr. Brown acted reasonably, he would have recognized his own ignorance of computer forensics and enlisted an expert in the best interests of his client. Instead, Mr. Brown chose to limit my defense to a very inartful and uninformed cross-examination of the Government's expert. Any competent computer expert could have successfully demonstrated to the jury that, at most, someone (1) searched for "barely legal" pornography, (2) visited and viewed the splash page only of a few legal pornography websites, (3) left the websites without any further action, and (4) this directly, and without that person's knowledge, resulted in thumbnail images being stored in a hidden location on the computer's hard drive.

No jury, when presented with the facts, rather than inferences, speculation, conjecture, and surmise, would have convicted me of <u>knowingly</u> accessing child pornography. Had Mr. Brown provided competent assistance and an informed defense, the outcome of the trial would have been different.

(2)  Trial counsel failed to conduct discovery.

The circumstances surrounding Mr. Brown's representation of me — the Government's failure to release discovery materials (see Ground Three) — prevented him from assisting me during a critical stage of the proceeding. Under those circumstances, although Mr. Brown was available to assist me, the likelihood that any lawyer could provide effective assistance was so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

Mr. Brown failed to act as a reasonable professional assistant. His incompetency lay in his failure to seek formal discovery, making the adversarial testing process unreliable.

The Supreme Court has held that counsel's failure to conduct discovery, based on a mistaken belief that the Government had an obligation to turn over inculpatory evidence, resulted in deficient performance.

(3)  Trial counsel failed to impeach Government informants.

At my trial, the Government called as witnesses Ivan Clark and Lynn Johnstone, Government informants, who testified that I had admitted molesting my nephew, Z.G., and downloading child pornography. In actuality, the informants' testimony was based on charging documents in my confidential legal file which they surreptitiously read out of my presence. Clark and Johnstone, who are drug offenders, were deliberately housed with pre-trial inmates charged with sex offenses and encouraged by the Government to actively engage other inmates in conversation in order to elicit incriminating statements about their pending charges. (See Ground Four.)

The Government produced Clark and Johnstone's extensive history as informants who frequently claimed that fellow inmates confessed their crimes to them while awaiting trial and who frequently received favors in exchange for cooperating with police.

Mr. Brown, however, had failed to investigate the backgrounds of Clark and Johnstone before trial and could not effectively impeach them during cross-examination. Mr. Brown's decision not to conduct a thorough background check into the histories of known Government "plants" severely prejudiced my defense.

(4)  Trial counsel failed to challenge the defective Indictment as to Counts One and Two.

A reasonably effective attorney would be expected to notice a fatal defect in an indictment, such as failing to state an offense, and move the court to dismiss it.

If this Court finds that, for the reasons stated in Ground Two, that Counts One and Two of the Indictment fail to state an offense, it should also find that Mr. Brown's failure to notice the defect at any stage during the proceedings amounts to ineffective assistance of counsel.

(5)    Cumulative error.

The Supreme Court has clearly established that the combined effect of multiple trial errors violates due process where it renders the resulting criminal trial fundamentally unfair. The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independantly warrant reversal. For Sixth Amendment purposes, attorney errors must be considered in the aggregate.

Mr. Brown's errors, individually and in combination, effectively deprived me of a meaningful defense. Due to the combined errors of Mr. Brown, I was unable to subject the prosecution's case to the crucible of meaningful adversarial testing — the essence of my right to effective assistance of counsel.

(6)    Appellate counsel failed to raise meritorious issues on direct appeal.

If this Court finds that appellate counsel, Mark C. Meyer, never properly raised the claims made in this motion, it should also find that such failure amounted to ineffective assistance of counsel, and that my waiver of my right to appeal those issues was involuntary.


(B)    Ground Two:

Counts One and Two of the Indictment fail to state an offense.

Supporting Facts:

An indictment alleging a violation of 18 U.S.C. § 2241 must set forth the specific facts alleged to constitute the proscribed sexual act in order to comply with the Fifth Amendment's Grand Jury clause.

The Fifth and Sixth Amendments set forth bedrock principles of constitutional law: "No person shall be held to answer for a capital or otherwise infamous crime, unless on a prosecution or indictment of a grand jury," U.S. Const. Amend. V., and "in all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation." U.S. Const. Amend. VI. These principles are enshrined in Fed. R. Crim. P. 7(c), which states that "the indictment ... shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fidelity to this rule is required in order to safeguard a defendant's constitutional rights.

The Indictment handed down by the grand jury, with respect to Counts One and Two, fails to satisfy the Fifth Amendment requirement because the Indictment is silent as to which of the four sexual acts set forth in the statute I was alleged to have intended to commit. Thus, there is a substantial danger that I was convicted on evidence of alleged sexual acts that was not presented

- 21 -

to the grand jury. The failure to allege the specific unlawful conduct proscribed by the statute is fatal because there is no way to determine what conduct the grand jury chose to allege as criminal.

18 U.S.C. § 2246(2) contains four precise and concrete definitions of the term "sexual act," each of which is easily distinguishable from the others. As is clear from the statutory language, each subparagraph is unique. Two definitions of the term "sexual act," subparagraphs (C) and (D), contain an additional, specific mens rea requirement. Subparagraph (A) further subdivides the term into two types of sex: vaginal or anal. Finally, the definition in subparagraph (B) is that or oral sex, while subparagraph (C) deals with manual or "object" penetration.

The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by a grand jury. This factual specificity is required in order to ensure that a conviction is not secured on the basis of facts not found by, and perhaps not even presented to a grand jury. This Court cannot say with any degree of certainty that my convictions as to Counts One and Two were obtained by the use of evidence that was first presented to a grand jury.

A "sexual act" is the most essential element of the crime of aggravated sexual abuse under 18 U.S.C. § 2241. Without a sexual act or the intent to perform a sexual act, there is no crime under the statute. The core of criminality is a "sexual act," of which there are four separate and distinct types. The term "sexual act" is an umbrella phrase, its panels protecting against at least four different species of unlawful acts. It is a generic term that can change dramatically with each indictment. The issue of what constitutes a sexual act is a question of fact, not of law. Many different acts, taken with variable gradations of intent, can constitute a "sexual act." Thus, the precise identification of the specific conduct alleged to constitute the charged "sexual act" is vital to a determination of a defendant's guilt.

The failure of the Indictment to specify the actions alleged to violate the statute is not a mere technical error. The fundamental prohibition of § 2241(c) is crossing a State line with the intent to commit an unlawful act. Given the variety of ways in which this statute could be violated, the conduct alleged to comprise the charged "sexual act" must be delineated in the Indictment. It is not sufficient that the Indictment charges the offense in the same generic terms as in the definition.

For these reasons, Counts One and Two fail to state an offense, and the Court did not have the subject matter jurisdiction to try or convict me on those Counts.

(C)    <u>Ground Three</u>:

The Government withheld exculpatory evidence.

<u>Supporting Facts</u>:

It is incontrovertible that the Government must disclose all material, exculpatory evidence in its possession and all inculpatory evidence it plans to use at trial. Failure to do so results in a trial that is fundamentally unfair. The Supreme Court has never wavered from this principle. So long as favorable evidence could very well affect the jury's decision, prosecutors must disclose it; and when they fail to do so, courts have a duty to order a retrial, allowing a jury to consider the previously concealed evidence.

On March 9, 2012, the Honorable Jon Stuart Scoles, United States Magistrate Judge, ordered the Government to "include in its expanded discovery file or otherwise make available law enforcement reports (excluding evaluative material of matters such as possible defenses and legal strategies), grand jury testimony and evidence or existing summaries of evidence in the custody of the United States Attorney's Office which provide a basis for the case against the defendant. The file will include Rule 16, Brady, and Jencks Act materials of which the United States is aware and possesses." (D.C. Doc. 8, ¶ 1). The Government, however, did not fully comply with that order, and has steadfastly resisted all my subsequent attempts to receive the undisclosed discovery.

Specifically, the Government has refused to disclose (1) grand jury testimony (Jencks Act materials), (2) the data from my computer's hard drive (Rule 16/Brady materials), and (3) the text messages from my cell phone(s), M.R.'s cell phone(s), and Z.G.'s cell phone(s) (Rule 16/Brady materials).

Subsequent to my trial, and as a result of the ineffective assistance of my trial counsel, Mark Brown, I filed several pro se motions to compel the Government to obey the Court's order and disclose the concealed materials. See D.C. Doc. 135, Motion for Return of Property; Doc. 142, Motion for Order to Compel Discovery; Doc. 143, Motion for Disclosure of Grand Jury Transcript and Witness Statements; Doc. 168, Motion to Return Property (Second).

The Government's refusal to obey the Court's disclosure order not only affronted the Court and prejudiced my efforts to defend myself. The Government's conduct has also frustrated the important federal policy favoring broad disclosure in criminal cases. The undisclosed Jencks Act material could have been used at trial to impeach the credibility of the Government's key witnesses: the alleged victims whose testimony was the sole basis for my conviction on Counts One through Four. The computer data, including the index.dat file which the Government used to create the Net Analysis Report (D.C. Doc. 73-38), contained significant exculpatory information as described in Ground One, § 1(c). And the cell phone records, which contained over 4,000 text messages, could have been used to establish a pattern of behavior of the alleged victims: that, for at least 3 years while they were ostensibly having regular sexual encounters with me, they never once mentioned, alluded, or talked about it in text messages sent to one another. I am mindful that evidence is not

generally admissable to prove a negative; however, the Government opened that door when they entered selected text messages from the same cell phone records into evidence. (D.C. Doc. 73-8, Govt's Exh. 8).

The Government's duty to disclose information favorable to the accused affects not only the office of the prosecutor, but also other investigative agencies of government which have gathered information as part of its case of prosecution against me.

The Government's concealment of exculpatory evidence has violated due process and has substantially infringed on my right to prepare and present a defense, a well-established and fundamental element of due process law.


(D)   Ground Four:

The Government planted informants to incriminate the defendant.

Supporting Facts:

The Government's use of Ivan Clark and Lynn Johnstone was not simply fortuitous, it was deliberate and calculated to actively elicit incriminating statements about pre-trial inmates' upcoming trials, in violation of the Sixth Amendment.

Clark and Johnstone, who are drug offenders and admitted Government informants, were deliberately housed with pre-trial inmates charged with sex offenses (J-Block) and encouraged by the Government to engage other inmates in conversation to elicit incriminating statements about their pending charges. Johnstone testified that, yes, he was cooperating with the Government before he was housed with the pre-trial inmates. (D.C. Doc. 123, p.185:16).

Both Clark and Johnstone have lengthy, well-documented histories as informants for the Government. Therefore, it is not by luck or happenstance that incriminating information ended up in the Government's hands. The Government, however, must take no action that circumvents and thereby dilutes the protection afforded by the right to counsel. The Government's knowing exploitation of an opportunity to confront me without counsel being present is as much a breach of its obligation not to circumvent the right to the assistance of counsel as it is the intentional creation of such an opportunity. This rule applies even where the Government expressly instructs its informants not to initiate conversations with other inmates and not to question them regarding their pending charges. Instructing its informants "not to keep their ears open" does not absolve the Government of its obligation to uphold my Sixth Amendment guarantee: not to be indirectly and surreptitiously inter-rogated outside the presence of counsel by the use of Government informants. It is no less egregious when the Government uses against me at trial testimony of an informant, the details of which he has learned directly from the covert perusal of my confidential discovery file and attorney-client correspondence.

- 24 -

Since I am prohibited from planting covert operatives in the offices of the United States Attorney, the concept of the fair administration of justice would necessarily prohibit the Government from planting covert operatives in jail with me and incentivizing their reprehensible behavior.

For these reasons, my trial was fundamentally unfair and the jury's verdict unreliable.

[End of Attahments to § 2255 Motion]



Michael Goodale 12002-029
U.S. Penitentiary, Tucson
P.O. Box 24550
Tucson, AZ 85734-4550

7014 2870 0001 4643 8795

No postmark-scm

LEGAL MAIL

⇔12002-029⇔
U S Dist Court - N D Iowa
Office of the Clerk
111 7TH AVE SE
Internal Box 12
Cedar Rapids, IA 52401-2101
United States

FEDERAL CORRECTIONS COMPLEX
9300 S. WILMOT ROAD
TUCSON, ARIZONA 85756

DATE: ___6 25-15___

The enclosed letter was processed though special mailing
procedures for forwarding to you. The letter has been neither
opened nor inspected. If the writer raises a question or problem
over which this facility has jurisdiction, you may wish to return the
material for further information or clarification. If the writer
encloses correspondence for forwarding to another
addressee, please return the enclosure to the above address.